SARAH E. BLACK ET AL. v. JOHN SINGLEY.

*Homestead—Alienation by husband.*

This case is ruled by *Stanton v. Hitchcock,* 64 Mich. 316.

Error to St. Joseph. (Loveridge, J.) Argued March 9, 1892. Decided March 18, 1892.

Ejectment. Plaintiffs bring error. Reversed, and judgment entered for plaintiffs. The facts are stated in the opinion.

*Howell, Carr & Barnard,* for appellants.

*R. R. Pealer* and *G. P. Doan,* for defendant.

McGRATH, J. This is ejectment by the heirs of Eliza Dickinson, claiming under a deed from Abner Moore, executed in 1852. Eliza Dickinson gave back a life lease. Moore died in 1869, leaving defendant in possession, and this suit was commenced in 1870.

Moore's wife died some time between 1855 and 1857.

Moore came to Michigan some time in 1834, leaving his wife and four children in Pennsylvania. Two of the children came to Michigan and lived for a time with Moore, but the wife never came, and never resided in Michigan; nor is there any evidence that any correspondence ever passed between husband and wife; nor does it appear that Moore ever returned to Pennsylvania, even to attend his wife's funeral. One witness who knew the family in Pennsylvania, and had removed to Michigan, and lived in the neighborhood, says that in 1842 or 1843 Moore said to him that "when he got ready and means he expected to fetch his family out." Other witnesses

say that in 1844 and 1845, and again in 1858, 1859, and 1860, Moore said that he had left Pennsylvania with the intention of never living with her ; that he could not live with her there, and would not here. There is no evidence that his wife ever expected or intended to live in Michigan.

Eliza Dickinson lived with Moore as his housekeeper from 1847 to 1867. The consideration named in the deed is $800.

The trial court instructed the jury as follows:

"It is conceded, gentlemen, by the evidence, that this wife never lived in the State of Michigan, but that she lived in the state of Pennsylvania. Now, the question which I submit to you is whether this 40 acres of land in question was, at the time it was conveyed or attempted to be conveyed to Eliza Dickinson, the homestead of Abner Moore, and whether he intended it as his home. If you find that it was his homestead, and that he intended that 40 acres of land for his home, then I instruct you that your verdict must be for the defendant.   *   *   *   The plaintiffs claim that this was not the homestead of Abner Moore; that he did not intend it for a home; that he was not living with his wife, and did not intend to live with her, but that he had abandoned her when he came from Pennsylvania here; and that he did not regard it as a homestead.  On the other hand, the defendant contends that he came to the State in 1834, and some years afterwards he went on to this piece of land, then in a wild state, and improved and put buildings upon it, and intended to make it his home.  The evidence which was admitted—and there was some of it given on both sides as to whether he intended to bring his wife here—may be taken into consideration by you upon this question as to whether he intended to make this 40 acres his home. The defendant, as I have stated to you, alleges that this was his homestead; that he intended to make it his homestead; and any attempted alienation of it without the signature of his wife to the deed of alienation would render that deed to Mrs. Dickinson void.   I instruct you that the burden of proof would be upon

the defendant to show that this was a homestead, and intended by Abner Moore to be his home, because that is the defense he sets up as against this ownership by Abner Moore and the conveyance to Eliza Dickinson. * * * If you find that he was a married man at the time he alienated it, or attempted to alienate it, to Eliza Dickinson, and intended it for a homestead, then I instruct you that the deed to Eliza Dickinson would be void, because his wife, notwithstanding she was not domiciled in this State, but in the state of Pennsylvania, did not join him in the deed. If you so find that this was his homestead, and he intended it to be at this time, then, as I instructed you before, your verdict shall be for the defendant. If you find it was not a homestead, that it was not intended by him to be a homestead, at the time he made the deed to Eliza Dickinson, then I instruct you that it would convey a good title, and that these plaintiffs would be entitled to recover."

Under these instructions the jury found for defendant, and plaintiffs appeal.

The instructions were clearly erroneous. The case is ruled by *Stanton v. Hitchcock,* 64 Mich. 316, 319. Eliza Dickinson was a *bona fide* purchaser for value. In view of the conveyance to her, it cannot be claimed that Moore intended to assert or preserve his wife's homestead rights in these premises. As is said in the case cited:

"Under our legal regulations, no imaginary or imputed intention can supplant the actual intent. It would be little short of absurdity to hold that Hitchcock could at the same time contemplate the occupancy of the house as the home of his second wife and also of the first. * * * * * * * * *

"The object of the Constitution is not ambiguous. It is to protect that dwelling which has been the actual home of the family from such disturbance as will make them lose its enjoyment. It is confined, by its language, to the property actually occupied as a homestead by a resident of Michigan; and, if the owner has a family, it is the actual home of that family which is protected

from seizure by creditors. There is nothing in the statute which contemplates that a wife who has never lived on the premises, or claimed to live there, may, after her husband's death, claim such an interest by relation as will avoid his dealings with property which he never meant should be the home of the absentee, however much he may have wronged her. The statute which, after a husband's death, secures rights to a widow, is confined expressly to resident widows.* * * * * *

"The first wife never contemplated it as her and her husband's joint home. * * * It must be remembered, not only that the character of any property as a homestead depends on intention, but that it may be entirely destroyed by a removal of residence. There is nothing in the law to prevent such removal at any time, and after it the property stands, like any other property, liable to sale or any other disposal by the owner at his pleasure. Under our laws, the sale by a husband whose wife is non-resident carries the property free from any right of dower. Actual non-residence in such case, in spite of the marital relation, cuts off any control over the sale of a complete title. * * * The law would be grossly tyranical if it tied the husband's hands in the one case at least, and it cannot be possible that such consequences could have been designed by the Constitution. It was designed to protect those who had subjected themselves to its laws, and acted in reliance on them, but not to treat as homes what are not homes, or give powers to non-residents which could not, under any circumstances, be of any use to them personally."

The husband and wife, living separate and apart under circumstances such as these, might each claim a homestead, the one in Pennsylvania and the other in Michigan, but neither could claim both.

Plaintiffs were entitled to judgment. The judgment is therefore reversed, and judgment entered here for plaintiffs, with costs of both courts, and the record remanded.

The other Justices concurred.