ROGERS v. DAY. [1]

1. HOMESTEAD—RIGHTS OF WIFE.

A wife does not lose any of her rights in the homestead by being driven therefrom by the cruelty of her husband.

2. SAME—MORTGAGE BY HUSBAND ALONE—COVENANTS OF WARRANTY—EFFECT OF SUBSEQUENT DIVORCE.

A covenant of warranty of title in a mortgage of a homestead, which was originally void because the mortgagor's wife did not join therein, does not operate to cure the invalidity upon the subsequent granting of a divorce to the wife.

3. SAME—ABANDONMENT—EVIDENCE.

A letter written by a wife to her husband, who has driven her from home by his cruelty, in which she states that she will

[1] Rehearing denied March 22, 1898.

not go back to live with him, that he can use the place to help himself with, and that she will have what she took away, does not amount to a declaration of abandonment of her homestead interest.

4. SAME.
   A husband's attempted conveyance of the homestead without the wife's signature is not validated by the subsequent abandonment of the homestead by the wife.

5. SAME—PURCHASE AT EXECUTION SALE—RIGHTS ACQUIRED.
   A purchaser of a homestead at an execution sale under a decree for alimony in favor of the owner's wife succeeds to her right to attack a prior mortgage as invalid because she did not join therein.

6. EQUITY PLEADING—ADVÉRSE POSSESSION.
   A title in complainant by adverse possession may be snown under a bill to set aside a mortgage which avers a purchase of the property by complainant's grantor at an execution sale at a certain date, the immediate taking of possession thereunder, which was more than 15 years before the commencement of the suit, and states that complainant and his grantors have since been in the "actual, continuous, and uninterrupted possession" of the premises; complainant not being obliged to rely solely upon the title acqured at the execution sale.

Appeal from Muskegon; Russell, J. Submitted January 5, 1898. Decided February 16, 1898.

Bill by Jesse Rogers against Albert G. Day to set aside a mortgage. From a decree for complainant, defendant appeals. Affirmed.

Bill to set aside a mortgage executed by one Isaac Louw to defendant for $100, dated September 20, 1880, on the ground that the land mortgaged was a homestead, and the mortgage was not signed by the wife. The following facts are established: Louw owned the land, and, with his wife and children, lived upon and occupied it as a homestead from 1870 to May, 1880. By his cruelty, he drove his wife and children from home. He was convicted of assaulting his wife, and sentenced to prison for 65 days. She filed a bill for divorce, and obtained a de-

cree February 23, 1881. After he was sent to prison, she exercised control over the farm during the year 1880. She had sold two cows which were left on the farm at the time of her husband's arrest. On his return from prison, seized and took away one of these cows, for which act he was charged with larceny, and arrested. While in jail, awaiting trial upon this charge, he executed the mortgage in question. On the same day he executed a deed of the land to one Carrington. In neither of these conveyances did the wife join. January 17, 1881, his wife filed a petition for alimony for the support of herself and her three infant children, described the land in question, stated its value at $500, that it had been acquired mainly by her industry, energy, and frugality, and asking for alimony, which was granted, and, upon the failure of her husband to pay, the land was sold upon execution, bid in by one Dresser, from whom complainant derives his title, through *mesne* conveyances. Complainant and his grantors had been in possession under the execution sale for 15 years prior to the commencement of this suit.

*James C. McLaughlin*, for complainant.

*Albert G. Day, in pro. per.*

GRANT, C. J. (*after stating the facts*). 1. Was the mortgage valid when executed ? To this there can be but one answer. It was not. The wife lost none of her marital rights, including her right in the homestead, by being driven therefrom through the cruelty of her husband. At the time the mortgage was executed, her homestead right was as secure as though she had been in actual possession. *Sherrid* v. *Southwick*, 43 Mich. 515; *Barker* v. *Dayton*, 28 Wis. 367; *Herron* v. *Knapp*, 72 Wis. 553.

2. The mortgage contained a covenant of warranty of title. Did this inure to the benefit of defendant upon the granting of the divorce ? The plain language of the statute, which makes such a mortgage absolutely void, is

a complete answer to the question. The covenant in an absolutely void instrument has no greater force than the instrument itself. A covenant in a deed which is void cannot be given life as an effectual conveyance by a decree of divorce. *Phillips* v. *Stauch*, 20 Mich. 369, 381; *Watertown Fire Ins. Co.* v. *Sewing Machine Co.*, 41 Mich. 131; *Hall* v. *Loomis*, 63 Mich. 709; *Alt* v. *Banholzer*, 39 Minn. 511 (12 Am. St. Rep. 681); *Barton* v. *Drake*, 21 Minn. 299.

The defendant cites, to support his contention, *Heaton* v. *Sawyer*, 60 Vt. 495; *In re Romero's Estate*, 75 Cal. 379; *Prater* v. *Prater*, 87 Tenn. 78 (10 Am. St. Rep. 623); *Wiggin* v. *Buzzell*, 58 N. H. 329. In *Heaton* v. *Sawyer* the decree settled all the rights of the parties. The care of the children was given to the wife, and a certain sum was decreed to be paid by the husband to her in lieu of all her rights in the estate. The same remark applies to *Wiggin* v. *Buzzell*. In *Prater* v. *Prater* the wife had deserted her husband, eloped with another man, had taken up a permanent residence with him in another State, and had continued to live in adultery with him until her husband's death. In *Re Romero's Estate* it was held that a homestead cannot be set apart from the estate of a decedent to minors who are not the children of decedent either in fact or by adoption. These cases do not support the contention.

3. An attempt was made to show an abandonment of the homestead by Mrs. Louw. This is based upon two letters, dated, respectively, in August and September, 1880, which are claimed to have been written by her. The former purports to be signed "Sarah M. Louw." The other has no signature. These letters were written after she had been compelled to leave her husband and his home, and while proceedings for divorce were pending. Neither letter says a word about abandoning her right to the homestead. The first states that she will not go back to live with him, and that he can use the place to help himself with, and she will have what she took away. The

second letter says nothing whatever about her intentions. Giving these letters the broadest significance, they do not amount to an abandonment. She, soon after, filed her petition for alimony, and prosecuted her suit to a decree. But an abandonment by husband or wife does not validate a conveyance of a homestead without the other's signature. *Belden* v. *Younger*, 76 Iowa, 567; *Bruner* v. *Bateman*, 66 Iowa, 488.

4. Defendant insists that only the husband, widow, or children can take advantage of this homestead right, and maintain a suit to protect it; and that, since neither in this case disaffirmed the conveyance, the complainant has no standing. Complainant stands in the shoes of Mrs. Louw. She chose to have the property sold upon execution on a decree rendered in her favor. This act estopped her to set up her homestead right as against the purchaser at the sale and his grantees. Complainant is in possession under her, and as her grantee under the execution sale. He succeeded to her rights.

5. Defendant attacks the regularity of the execution sale, and sets up alleged jurisdictional defects. If complainant rested his rights upon this sale, it would be necessary to determine its validity. He, however, has shown title by adverse possession. Defendant insists that such title is not claimed by the bill, and that, therefore, complainant cannot recover on this ground, and cites *Moran* v. *Palmer*, 13 Mich. 367. The decision in that case was based upon the fact that complainant, after proofs were in, sought relief upon equities springing from *estoppels in pais*, which were not even referred to, either in the bill or the answer. The case, however, was remanded, with permission to complainant to amend his bill. In the present case complainant sets up the date of a sale, and the immediate taking of possession thereunder (which was more than 15 years before the commencement of the suit), the continuance of such possession, and states that he and his grantors have been in "actual, continuous, and uninterrupted possession" of the premises. An adverse

possession is therefore set up, and can be taken advantage of under the prayer for general relief.

The decree is affirmed, with costs.

The other Justices concurred.